# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

SCOTLANE McCUNE,
Defendant and Appellant.

S276303

First Appellate District, Division Five
A163579

Napa County Superior Court
CR183930

---

August 8, 2024

Justice Kruger authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Groban, Jenkins, and Evans concurred.

Justice Liu filed a concurring opinion, in which Justice Evans concurred.

---

PEOPLE v. McCUNE

S276303

Opinion of the Court by Kruger, J.

Under California law, individuals who are convicted of a crime must be ordered to make full restitution to their victims "in every case, regardless of the sentence or disposition imposed." (Cal. Const., art. I, § 28, subd. (b)(13)(B); see Pen. Code, § 1202.4.) But not all victim losses are immediately ascertainable; the extent of losses from some injuries may not be known for months or even years. When a victim's losses are not ascertainable at the time the defendant is sentenced, the sentencing court must issue a restitution order providing "that the amount shall be determined at the direction of the court." (Pen. Code, § 1202.4, subd. (f).) The court then "shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution until such time as the losses may be determined." (*Id.*, § 1202.46.)

This case raises a question concerning the relationship between these provisions governing postsentencing restitution calculations and the provisions governing probation. Defendant Scotlane McCune was placed on felony probation for five years and ordered at sentencing to pay victim restitution in an amount to be determined. McCune's probation period was shortened, however, by operation of new legislation capping felony probation at two years. The trial court fixed the amount of victim restitution not long thereafter. McCune argues the order came too late because, under the probation statute, the trial

1

court's authority to modify the order of probation ended once his term of probation had expired.  (Pen. Code, § 1203.3.)

The Court of Appeal rejected McCune's argument as inconsistent with the clear instructions in Penal Code section 1202.46, which provides that the sentencing court retains jurisdiction to fix the amount of restitution until the amount of the victim's losses can be determined.  We agree and therefore affirm the judgment.

## I.

In June 2017, McCune crashed a vehicle head-on into a tree while driving without a license.  He helped his injured passenger, Miguel Villa, exit the vehicle, and then fled the scene.  McCune was charged with felony hit and run with injury (Veh. Code, § 20001, subd. (a)) and misdemeanor driving without a license (*id.*, § 12500, subd. (a)).  He pleaded no contest to the felony hit and run and the trial court dismissed the misdemeanor charge.  At sentencing in June 2018, the trial court suspended imposition of sentence and placed McCune on five years' formal probation.  One of the probation terms required McCune to "[p]ay restitution to Miguel Villa and/or the California Victim Compensation & Government Claims Board in an amount to be determined by the Probation Officer and the Court."  On December 31, 2020, the probation department filed a restitution investigation report stating that Villa sought $30,166.23 in restitution for medical losses.

The day after that filing, on January 1, 2021, new legislation took effect that capped the maximum term of felony probation to two years, subject to exceptions not relevant here. (Assem. Bill No. 1950 (2019–2020 Reg. Sess.), Stats. 2020, ch. 328, § 2 (Assembly Bill 1950).)  Because McCune had by then

served approximately two and a half years of his term of probation — more than the maximum two-year term prescribed by the new law — the trial court terminated McCune's probation on January 14, 2021. One week later, the District Attorney moved for a restitution hearing. McCune objected that once his probation had terminated, the court no longer had the authority to fix an amount of victim restitution. The trial court disagreed, concluding that it had the power to set the amount of victim restitution under Penal Code section 1202.4 (section 1202.4) and Penal Code section 1202.46 (section 1202.46). The parties eventually stipulated to $21,365.94 in victim restitution.

On appeal, McCune renewed his objection to the trial court's authority to set the amount of victim restitution after probation had terminated.[1] The Court of Appeal rejected the argument, citing sections 1202.4 and 1202.46. (*McCune, supra*, 81 Cal.App.5th 648, 653.) The court saw no tension or conflict between those provisions and the provisions governing probation: While "[s]ection 1203.3 grants courts authority and jurisdiction to revoke, modify, or change probation conditions generally, including restitution orders, during the term of probation," sections 1202.4 and 1202.46 grant "additional authority to address the specific situation in which 'the amount of loss cannot be ascertained at the time of sentencing.'"

---

[1] McCune did not dispute that the trial court had fundamental jurisdiction, but instead argued that the trial court exceeded the authority conferred on it by statute. (See *People v. McCune* (2022) 81 Cal.App.5th 648, 651 (*McCune*); cf., e.g., *People v. Chavez* (2018) 4 Cal.5th 771, 780 (*Chavez*) ["Even when there is no question that a court's action is well within the scope of its fundamental jurisdiction, the court may still exceed constraints placed on it by statutes, the Constitution, or common law."].)

(*McCune*, at pp. 654–655.) "When a court follows this process, section 1202.46 grants the court jurisdiction 'for purposes of imposing or modifying restitution until such time as the losses may be determined' (§ 1202.46), even if that occurs after probation has ended." (*Id.* at p. 655.)

The Court of Appeal's conclusion is consistent with that of the only other reported decision concerning the postprobation exercise of section 1202.46 jurisdiction to fill in a restitution amount that could not be ascertained at sentencing, *People v. Zuniga* (2022) 79 Cal.App.5th 870 (*Zuniga*), which similarly concluded that jurisdiction existed despite the early termination of probation by operation of Assembly Bill 1950. As the Court of Appeal noted, its decision is also consonant with *People v. Bufford* (2007) 146 Cal.App.4th 966, 970–972 (*Bufford*), which held that where a defendant was ordered at sentencing to pay victim restitution, the jurisdiction conferred by sections 1202.4 and 1202.46 to specify the amount of restitution owed did not automatically terminate with the completion of a prison sentence. (See *McCune*, *supra*, 81 Cal.App.5th at p. 653.)

But the Court of Appeal parted company with other cases that had taken a different view of the relevant statutes. In *Hilton v. Superior Court* (2014) 239 Cal.App.4th 766, 769 (*Hilton*) and *People v. Waters* (2015) 241 Cal.App.4th 822, 825 (*Waters*), the courts held that once probation has terminated, a trial court no longer has the power to issue new restitution orders — whether ordering restitution for the first time (*Waters*) or adding to the restitution amount ordered at sentencing that the defendant had already fulfilled (*Hilton*). Although the cases addressed different questions from the one presented here, the Court of Appeal criticized their reasoning for expressing an

unduly restrictive view of a court's authority under section 1202.46.  (See *McCune, supra*, 81 Cal.App.5th at pp. 654–655.)

In view of the tension in the case law, we granted review to answer the question whether a trial court retains the power to fix the amount of victim restitution under sections 1202.4 and 1202.46 after a term of probation has terminated.[2]

---

[2]    We once previously granted review to address the issue presented.  (*People v. Ford* (2015) 61 Cal.4th 282, 284.)  We had no occasion to decide this issue in *Ford*, however, because we found that the defendant there had impliedly consented to the court's authority by agreeing to a continuance of the restitution hearing to a date after his probationary term expired.  (*Id.* at pp. 284–285.)  No similar circumstances are present here.

The question presented here, concerning the scope of a trial court's power under sections 1202.4 and 1202.46, is the one McCune framed in his petition for review.  It is also the sole question he raised in the trial court and in the Court of Appeal.  After the issue had been fully briefed in this court, however, McCune sought to file a supplemental brief that for the first time argued that sections 1202.4 and 1202.46 are simply inapplicable because the restitution award exceeded the amount of losses McCune's victim had suffered as a result of his crime.

In *People v. Martinez* (2017) 2 Cal.5th 1093 (*Martinez*), this court held that in a hit-and-run case, section 1202.4 restitution is limited to losses caused by the crime itself — namely, leaving the scene of an injury accident — and does not cover losses attributable solely to the noncriminal act of being involved in a car crash.  We contrasted the power to order direct victim restitution under section 1202.4 with the broader power to order restitution as a condition of probation under Penal Code section 1203.1, subdivision (j), which allows a court to order restitution amounts that are " 'reasonably related to the offense underlying the conviction and can serve the purposes of rehabilitating the offender and deterring future criminality.' "

## II.

We start with an overview of the law governing victim restitution. "Under the California Constitution, as amended in 1982 by Proposition 8 (commonly known as The Victims' Bill of Rights), every crime victim has a right to be compensated by the defendant for losses incurred as a result of the defendant's crime. [Citation.] At the time Proposition 8 was passed, 'victims had some access to compensation through the Restitution Fund, and trial courts had discretion to impose restitution as a condition of probation.' [Citation.] Courts did not, however, have general statutory authority to order the defendant to pay restitution directly to the victim of his or her crime. [Citation.] In passing Proposition 8, the electorate expanded victims' access to compensation by declaring an 'unequivocal intention . . . that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer,' and instructing the Legislature to adopt legislation to implement this directive." (*Martinez, supra,* 2 Cal.5th at p. 1100; see Prop. 8, as approved by voters, Gen. Elec. (June 8, 1982), adding Cal. Const., art. I, former § 28, subd. (b); Stats. 1982, § 3, pp. A-186 to A-187.) Proposition 8 required

---

(*Martinez*, at p. 1102, quoting *People v. Carbajal* (1995) 10 Cal.4th 1114, 1119.)

It is now too late in the day for us to consider McCune's argument that sections 1202.4 and 1202.46 are inapplicable, which belatedly calls into question the very premise on which McCune sought this court's review. We will therefore answer the question McCune initially posed, which is whether the authority conferred by sections 1202.4 and 1202.46 lapses with the termination of the probationary period. We express no view on any *Martinez*-based argument he may wish to raise in a collateral challenge.

that restitution be ordered "in every case, regardless of the sentence or disposition imposed," absent "compelling and extraordinary reasons." (Stats. 1982, § 3, p. A-187.) "The Legislature enacted responsive legislation in 1983, and has amended it frequently thereafter." (*People v. Birkett* (1999) 21 Cal.4th 226, 230; see Stats. 1983, ch. 1092, § 320.1, p. 4058.)

Initially the Legislature addressed victim restitution in a piecemeal fashion. One statute required victim restitution in cases in which defendants were granted probation, while a different statute required restitution when probation was denied. (See *People v. Giordano* (2007) 42 Cal.4th 644, 652–653 (*Giordano*).) In the mid-1990's, the Legislature consolidated these provisions in section 1202.4 and amended that provision to make clear that victim restitution is required "*[i]n every case* in which a victim has suffered economic loss as a result of the defendant's conduct." (§ 1202.4, subd. (f), as amended by Stats. 1995, ch. 313, § 5, p. 1756, italics added; see *Giordano*, at p. 653 ["Penal Code section 1202.4 now requires restitution in every case, without respect to whether probation is granted."].) This language echoed the language of the Constitution that victim restitution "shall be ordered from the convicted persons in *every case, regardless of the sentence or disposition imposed*." (Cal. Const., art. I, former § 28, subd. (b)(13)(B), italics added; *Martinez, supra,* 2 Cal.5th at pp. 1100–1101.)

Shortly thereafter, the Legislature added the provisions at issue here, concerning the deferred calculation of victim restitution. In 1996, the Legislature amended section 1202.4 to provide that "[i]f the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution." (§ 1202.4,

7

subd. (f), as amended by Stats. 1996, ch. 629, § 3, p. 3467.)[3] A few years later, the Legislature then passed a related provision concerning jurisdiction in section 1202.46, establishing that the trial court "shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution until such time as the losses may be determined." (Sen. Bill No. 1126 (1999–2000 Reg. Sess.), adding § 1202.46 by Stats. 1999, ch. 888, § 3, p. 6388 (Senate Bill 1126).)

In 2008, voters passed a constitutional amendment striking a provision that had previously permitted courts to decline to order a defendant to pay victim restitution for "compelling and extraordinary reasons." (Voter Information Guide, Gen. Elec. (Nov. 4, 2008) text of Prop. 9, § 4.1, p. 130.) In 2016, the Legislature amended sections 1202.4 and 1202.46 to align the statutory law with this constitutional amendment and reiterated its intent to ensure that section 1202.4, subdivision (f) (section 1202.4(f)) comports with the constitutional mandate

---

[3] Section 1202.4, subdivision (f) provides in full: "Except as provided in subdivisions (p) and (q), in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution. The court may specify that funds confiscated at the time of the defendant's arrest, except for funds confiscated pursuant to Chapter 8 (commencing with Section 11469) of Division 10 of the Health and Safety Code, be applied to the restitution order if the funds are not exempt for spousal or child support or subject to any other legal exemption."

that restitution be ordered " 'in every case . . . in which a crime victim suffers a loss.' " (Stats. 2016, ch. 37, § 5, quoting Cal. Const., art. I, § 28, subd. (b)(13)(B); Stats. 2016, ch. 37, §§ 3–5.)

## III.

In a leading appellate case addressing deferred restitution calculations, the Court of Appeal held that when a sentencing court has ordered a criminal defendant to pay victim restitution in an amount to be determined later under section 1202.4(f), jurisdiction to fix the amount of restitution does not automatically terminate with the completion of the defendant's sentence of imprisonment. (*Bufford*, *supra*, 146 Cal.App.4th at p. 970.) Thus, even if the defendant is released before the victim's losses can be ascertained, the trial court retains jurisdiction to settle the amount of restitution once the losses have become ascertainable. (*Id.* at pp. 971–972.) To conclude otherwise, the court reasoned, would be to ignore the plain import of the statutory framework and to "frustrate the clear language" of the Constitution's guarantee of full victim restitution. (*Bufford,* at p. 971.)

Since it was decided nearly two decades ago, *Bufford* has not been challenged, and it remains unchallenged here. McCune acknowledges that under sections 1202.4 and 1202.46, a court has the power to fix the amount of victim restitution once a victim's losses become ascertainable, even if the defendant has already completed a term of imprisonment. McCune contends, however, that a different rule governs in cases in which the defendant is not sentenced to prison but is instead placed on probation.

McCune raises two arguments in support of recognizing a special rule to govern probation cases. At the outset, he argues

that section 1202.46 confers jurisdiction only in cases in which imprisonment is ordered. In the alternative, he argues that even if section 1202.46 does apply to probation cases, it is circumscribed by Penal Code section 1203.3 (section 1203.3), which limits a trial court's jurisdiction to modify an order of probation to the duration of the probation term. We address the two arguments in turn. We find neither persuasive.

**A.**

We begin with McCune's first argument, which concerns the scope of section 1202.46. The argument turns on the meaning of the statute, so we begin with its text, considered in the context of "related provisions, terms used in other parts of the statute, and the structure of the statutory scheme." (*Larkin v. Workers' Comp. Appeals Bd.* (2015) 62 Cal.4th 152, 157 (*Larkin*).)

The current version of section 1202.46 provides in full: "Notwithstanding Section 1170, when the economic losses of a victim cannot be ascertained at the time of sentencing pursuant to subdivision (f) of Section 1202.4, the court shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution until such time as the losses may be determined. This section does not prohibit a victim, the district attorney, or a court on its own motion from requesting correction, at any time, of a sentence when the sentence is invalid due to the omission of a restitution order or fine pursuant to Section 1202.4."

Nothing in the operative language of this provision supports the restrictive reading McCune asks us to adopt. The provision is broadly worded, stating that a court retains jurisdiction "over a person subject to a restitution order" until

losses become ascertainable. (§ 1202.46.) A person who has been ordered to make restitution and who has been placed on probation is no less "a person subject to a restitution order" than if the same person had been sentenced to prison. Thus, by its terms, section 1202.46 confers jurisdiction in probation cases and nonprobation cases alike.

Considering the broader statutory context reinforces this conclusion. As all agree, section 1202.46 was meant to work in tandem with section 1202.4(f), which section 1202.46 expressly references. Section 1202.4(f) is clear about the scope of its coverage: The obligation to make full victim restitution applies in "*every case* in which a victim has suffered economic loss as a result of the defendant's conduct." (§ 1202.4(f), italics added.) As this court explained in *Giordano*, and as noted above, this provision was added as part of an effort to consolidate the separate provisions that had formerly governed probation cases and nonprobation cases, and was designed to make clear that the statutory obligation to order full victim restitution applies "*without respect to whether probation is granted.*" (*Giordano*, *supra*, 42 Cal.4th at p. 653, italics added; cf. *People v. Birkett*, *supra*, 21 Cal.4th at p. 247, fn. 21 [noting that the Legislature "amended Penal Code section 1202.4 to create a uniform restitutionary scheme for all adult offenders"].)

After making clear that direct victim restitution must be ordered "in every case," section 1202.4 goes on to specify that if the amount of loss cannot be ascertained at sentencing, then the trial court must issue an order providing "that the amount shall be determined at the direction of the court. The court shall order full restitution." (§ 1202.4(f).) It stands to reason that the coordinate provision in section 1202.46 — which provides the mechanism for the court to follow through on its promise to

determine the restitution amount — would likewise apply "in every case," and not only in those cases in which imprisonment is ordered.

McCune contends that while section 1202.46 may not explicitly distinguish between probation and nonprobation cases, such a distinction is implicit in the opening language specifying that section 1202.46 applies "[n]otwithstanding Section 1170." To understand this argument requires some background. At the time section 1202.46 was enacted, the version of Penal Code section 1170 (section 1170) then in force provided that "[w]hen a defendant . . . has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections," a court had 120 days after sentencing to vacate or modify a sentence of imprisonment. (Pen. Code, former § 1170, subd. (c); see *Dix v. Superior Court* (1991) 53 Cal.3d 442, 455.) (The same limitation exists in present law but is now set forth in Pen. Code, § 1172.1, subd. (a)(1).) Former section 1170 thus applied only to defendants serving custodial sentences and not to defendants sentenced to probation.

As both sides agree, the "[n]otwithstanding" clause in section 1202.46 makes clear that even after 120 days have elapsed following a defendant's sentencing to a term of imprisonment, the court retains power to set an amount of restitution once the victim's losses become ascertainable. But McCune argues that the Legislature's decision to specify that section 1202.46 confers jurisdiction "[n]otwithstanding Section 1170" — but not, for instance, also "notwithstanding" the probation statute, section 1203.3 — means that section 1202.46 must apply only to custodial sentences.

The argument is unpersuasive. Not only does the operative language of section 1202.46 draw no explicit distinction between probation and nonprobation cases, but it also cross-references and works in tandem with a provision, section 1202.4(f), that was drawn to eliminate any such distinction. We are not convinced, then, that the Legislature intended to smuggle in that very same distinction through a prefatory specification that section 1202.46 jurisdiction exists "[n]otwithstanding Section 1170." (§ 1202.46.) The more likely explanation is that the Legislature saw potential for confusion about the relationship between the provisions of section 1202.46 and former section 1170 that required clarification but perceived no such potential for confusion with respect to the relationship between section 1202.46 and the probation statute.

McCune cites legislative history to support his argument that section 1202.46 is more limited than it may at first appear. We may, of course, consult legislative history to resolve ambiguities in the statutory text. (E.g., *Larkin, supra*, 62 Cal.4th at p. 158.) But the statutory text is unambiguous on the question before us: The plain text of section 1202.46 confers jurisdiction to fix the amount of victim restitution once that amount becomes ascertainable, and it does so in probation cases as well as nonprobation cases. We may not consult legislative history to cloud the meaning of statutory text when its meaning is clear. (See *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 ["Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation."].)

Even if we were to consider the legislative history, however, it would not alter our conclusion about section

1202.46's applicability in probation cases. The Legislature enacted section 1202.46 as part of Senate Bill 1126 in 1999. The legislative history addressing section 1202.46 is limited because the primary focus of Senate Bill 1126, and thus of its available legislative history, concerned a different subject: namely, expanding and making permanent a pilot project permitting defendants who commit crimes while incarcerated to make electronic court appearances for arraignments as well as for ordering restitution payments. (Stats. 1999, ch. 888, §§ 1, 2, pp. 6386–6388; see, e.g., Sen. Com. on Appropriations, Fiscal Summary of Sen. Bill No. 1126 (1999–2000 Reg. Sess.) as introduced Feb. 26, 1999.) Nothing in the available history, however, supports the conclusion that the Legislature implicitly intended for section 1202.46 to apply in nonprobation cases only.

McCune argues that because Senate Bill 1126 was primarily focused on other matters concerning incarcerated defendants, including electronic restitution hearings, we should infer that the postsentencing restitution provision in section 1202.46, too, was exclusively aimed at incarcerated defendants. But we see no basis for understanding the intended scope of section 1202.46 as implicitly limited by other, unrelated provisions that happened to be in the same bill. And indeed, several committee analyses refute this understanding. The analyses separately identify Senate Bill 1126's objective of extending jurisdiction over defendants ordered to pay restitution, in general, from its objective of enabling electronic court access for restitution hearings for incarcerated defendants. The analyses thus reflect a recognition that the provisions were, in fact, distinct and varied in objective and scope. They are entirely consistent with the conclusion that section 1202.46 was not intended to apply exclusively in cases

involving incarcerated defendants. (See, e.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1126 (1999–2000 Reg. Sess.) as amended Sept. 2, 1999, pp. 1–2; Assem. Com. on Public Safety, Sen. Bill No. 1126 (1999–2000 Reg. Sess.) as amended June 16, 1999, at pp. 1–2.)

As McCune notes, one bill analysis prepared by the Department of General Services did assert that passage of section 1202.46 would clear up trial court confusion over section 1170's 120-day limit by establishing that a court retains jurisdiction over persons "sent to CDC facilities to serve their sentence." (Dept. General Services, analysis of Sen. Bill No. 1126 (1999–2000 Reg. Sess.) as amended June 16, 1999, p. 2; see also Dept. General Services, Enrolled Bill Rep. on Sen. Bill. No. 1126 (1999–2000 Reg. Sess.) Sept. 2, 1999, p. 3.) That the Department of General Services identified the clarification of jurisdiction over incarcerated defendants as one of the impacts of section 1202.46 does not mean, however, that the Department believed this was the only impact intended by the Legislature. In any event, what the Department of General Services may or may not have believed is beside the point. While agency analyses can sometimes be " 'instructive,' " they clearly do not afford the same kind of "direct window[] into legislative intent" as committee analyses and cannot, in any event, "be used to alter the substance of legislation." (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1219, fn. 3.) Here, as explained, the committee analyses tend to confirm what the text already tells us about the substance of the legislation: Section 1202.46 is not limited to cases involving sentences of imprisonment.

**B.**

McCune argues that even if section 1202.46 applies to probation cases, the time for fixing the amount of victim restitution is circumscribed by the probation statute.

McCune's argument rests on the provision concerning the modification or revocation of probation, which provides that a court "has the authority *at any time during the term of probation* to revoke, modify, or change its order of suspension of imposition or execution of sentence." (§ 1203.3, subd. (a), italics added.) As McCune notes, section 1202.4 makes payment of restitution a mandatory condition of probation, while also clarifying the status of a restitution order once probation ends: "In every case in which the defendant is granted probation, the court shall make the payment of restitution fines and orders imposed pursuant to this section a condition of probation. Any portion of a restitution order that remains unsatisfied after a defendant is no longer on probation shall continue to be enforceable by a victim pursuant to [Penal Code] Section 1214 until the obligation is satisfied." (§ 1202.4, subd. (*l*).) McCune argues that because section 1202.4 makes restitution a mandatory condition of probation, section 1203.3, subdivision (a)'s implicit time limit on modifying probation conditions must apply to any changes made to a restitution order, including the insertion of a dollar amount once the victim's losses become ascertainable. Thus, to avoid a conflict with the probation statute, section 1202.46 must be read as conferring jurisdiction to fix the amount of restitution during the term of probation but not after probation has terminated.

Both Courts of Appeal to address this argument have rejected it. In *Zuniga, supra,* 79 Cal.App.5th at page 877, the

court reasoned that where payment of restitution has already been ordered under section 1202.4 as a condition of probation, a court does not "modify the order or impose any new condition by setting the amount once it could be determined." The limited time for modifying a probation term under section 1203.3 therefore does not apply.

Although the Court of Appeal in this case reached the same result, it rejected the argument for what it described as a more "straightforward" reason. (*McCune, supra,* 81 Cal.App.5th at p. 654.) Whether section 1203.3 applies or not, the court explained, there is no statutory conflict that would warrant imposing an extratextual time limit on a court's power under section 1202.46. While section 1203.3 establishes a court's general authority to modify or revoke probation during the probationary term, section 1202.46 provides "additional authority" for the specific, limited purpose of filling in the amount of victim restitution already ordered under section 1202.4(f), once the victim's losses can be ascertained. (*McCune,* at p. 655; see *id.* at pp. 654–655.)

We agree with the Court of Appeal in this case. Even assuming for argument's sake that an order fixing the amount of restitution once the victim's losses become ascertainable "revoke[s], modif[ies], or change[s]" the conditions of probation within the meaning of section 1203.3, subdivision (a), McCune fails to identify any statutory conflict that would justify circumscribing a court's authority under section 1202.46. Section 1203.3 is a limited grant of jurisdiction for the general purposes set forth in that provision. Section 1203.3 does not purport to set an across-the-board limit on the exercise of jurisdiction granted elsewhere. Thus, while the limited nature of section 1203.3 jurisdiction means that a trial court loses

17

jurisdiction to modify a probation order after probation terminates (*In re Griffin* (1967) 67 Cal.2d 343, 346), it does not limit the more specific, "additional" grant of authority in section 1202.46 to set the amount of victim restitution once the victim's losses can be ascertained. (*McCune, supra,* 81 Cal.App.5th at pp. 655.) There is no statutory conflict here that would justify reading an implicit time limit into a court's power to fill in a missing amount once the victim's losses can be ascertained and thus ensure the victim receives full restitution.

McCune's argument to the contrary is inconsistent with what we know of the Legislature's purpose in enacting the direct victim restitution law. The premise of McCune's argument is that, by ordering that restitution be included as a mandatory term of probation (§ 1202.4, subd. (*l*)), the Legislature intended to import a time limit on deferred restitution calculations that would apply in probation cases only. In other words, even though the Legislature made clear that a defendant's obligation to make full victim restitution under section 1202.4(f) applies in probation and nonprobation cases alike, McCune posits that the Legislature nonetheless set up a scheme in which a trial court's ability to set a restitution amount depends on whether the defendant has been placed on probation or else sentenced to imprisonment. (Cf. *Bufford, supra,* 146 Cal.App.4th at p. 970 [holding that the trial court had jurisdiction to set the amount of victim restitution owed after the defendant had completed her prison sentence, pursuant to §§ 1202.4 and 1202.46].)

It is difficult to understand why a Legislature attempting to craft a uniform set of obligations to ensure full victim restitution in every case — "regardless of the sentence or disposition imposed" (Cal. Const., art. I, § 28, subd. (b)(13)(B)) — would have created a system that works this way.

McCune suggests that the Legislature may have wished to demonstrate greater leniency to criminal defendants placed on probation, given probation's broadly rehabilitative purposes. But McCune does not explain why the distinct purposes of probation are relevant in the context of victim restitution, given the unqualified constitutional mandate that victims be fully compensated for their losses, including in probation cases. (See Cal. Const., art. I, § 28, subd. (b)(13)(A).) Nor does McCune explain why the Legislature would choose to disfavor victims in cases where defendants are sentenced to probation. The suggestion that the Legislature may have perceived postprobation payment of victim restitution as somehow contrary to the rehabilitative and finite nature of probation is particularly unconvincing, given the Legislature expressly permitted victims in probation cases to enforce unpaid restitution obligations even after probation has ended. (§ 1202.4, subd. (*l*).) In light of the evident aims underlying the constitutional provisions and the statutory provisions designed to implement them, we read section 1202.46 as it is written — as extending the same authority to fix a deferred restitution amount in probation cases as in nonprobation cases, and not as implicitly limited by the time generally prescribed for modifying or revoking probation.

McCune raises a series of objections to this straightforward conclusion, but none is availing. First, he notes that certain subdivisions of section 1203.3 specifically refer to modifications respecting restitution. Specifically, section 1203.3, subdivision (b)(4) provides that a court's exercise of its authority to modify probation is subject to the following rules: "The court may modify the time and manner of the term of probation for purposes of measuring the timely payment of

restitution obligations or the good conduct and reform of the defendant while on probation. The court shall not modify the dollar amount of the restitution obligations due to the good conduct and reform of the defendant, absent compelling and extraordinary reasons, nor shall the court limit the ability of payees to enforce the obligations in the manner of judgments in civil actions." Subdivision (b)(5) then goes on to provide: "This section does not prohibit the court from modifying the dollar amount of a restitution order pursuant to subdivision (f) of Section 1202.4 at any time during the term of the probation."

McCune argues that the wording of subdivision (b)(5), in particular, must mean that "[t]his section" — i.e., section 1203.3 — *does* "prohibit the court from modifying the dollar amount of a restitution order pursuant to [section 1202.4(f)] at any time" *after* "the term of the probation." The argument reads too much into subdivision (b)(5). Read in context, subdivision (b)(5) makes clear that other limitations on a court's authority to modify probation under section 1203.3 — for instance, the subdivision (b)(4) limitation on modifying the restitution amount due to a defendant's good conduct — do not otherwise bar the court from adjusting the dollar amount of the restitution order. In the absence of any affirmative indication that section 1203.3 was meant to impose an all-purpose limit on a court's jurisdiction in probation cases, this clarification about what *section 1203.3* "does not prohibit" (§ 1203.3, subd. (b)(5)) says nothing about whether and when a court is permitted under *section 1202.46* to specify the amount of restitution once the victim's losses become ascertainable.

McCune next invokes two appellate cases holding the trial court exceeded its jurisdiction by setting the amount of victim restitution following the termination of probation. Both cases

are distinguishable, however. In the first case, defendant Hilton was sentenced to probation and ordered to pay $3,215 of victim restitution. (*Hilton, supra*, 239 Cal.App.4th at p. 769.) More than a year after Hilton's probation had expired, and after Hilton had already fulfilled the initial restitution order, the victim filed a motion seeking $886,000 in additional restitution. (*Id.* at p. 770.) The Court of Appeal found that section 1202.46 did not confer jurisdiction to award additional restitution because "losses not only might have been determined but were in fact determined" when the trial court initially found Hilton owed the victim $3,215. (*Hilton*, at p. 782.) In the second case, defendant Waters was ordered to pay restitution more than two years after she successfully completed her probation, though she had never been ordered to pay restitution at sentencing. (*Waters, supra*, 241 Cal.App.4th at p. 825.) The Court of Appeal reversed, explaining that the restitution statutes "must be harmonized with the preexisting statutory and case law concerning probation . . . which limits the court's power to modify probation and restitution after the expiration of the probationary period." (*Id.* at pp. 830–831.)

In both *Hilton* and *Waters*, the Courts of Appeal held that a court lacks jurisdiction to impose *new* restitution orders once the period of probation has lapsed. Neither case considered the scope of a court's jurisdiction in the scenario we confront here, in which a sentencing court has timely ordered victim restitution and later fixes the amount of restitution after the amount of the victim's losses become ascertainable. Still, McCune argues that even if *Hilton* and *Waters* are not precisely on point, the logic of the cases cannot be squared with a rule that would permit a court to fix the amount of restitution after probation has terminated.

McCune is incorrect. As the Attorney General notes, section 1202.46's deferred amount-setting provision did not apply in *Hilton,* since the amount of the victim's losses "not only might have been determined but were in fact determined" at the time of the defendant's initial restitution hearing. (*Hilton, supra,* 239 Cal.App.4th at p. 782.) And *Waters* concerned a different portion of section 1202.46, not at issue here, providing that "[t]his section does not prohibit a victim, the district attorney, or a court on its own motion from requesting correction, at any time, of a sentence when the sentence is invalid due to the omission of a restitution order or fine pursuant to Section 1202.4." (§ 1202.46; see *Waters, supra,* 241 Cal.App.4th at p. 830.) The holdings of these cases do not dictate an answer to the question we address here, concerning a trial court's jurisdiction under section 1202.46 to specify the amount of victim restitution following the termination of probation when the defendant had initially been ordered to pay victim restitution in an amount to be determined.[4]

Still, we acknowledge that both *Hilton* and *Waters* contain statements about the interplay between the relevant statutes that lend support to the argument McCune raises. (Accord,

---

[4] McCune does not argue that Villa's losses were in fact ascertainable at sentencing, nor does he argue that the court's jurisdiction lapsed due to delay in fixing restitution after such a time as the losses may have been determined. We therefore have no occasion to consider the court's jurisdiction under sections 1202.4 and 1202.46 in such circumstances. We similarly have no occasion to consider the trial court's power under section 1202.46 to "impos[e]" restitution following the termination of probation where a defendant was not first ordered to pay restitution at sentencing under section 1202.4(f). (§ 1202.46.)

*McCune, supra*, 81 Cal.App.5th at p. 654.)   We disapprove *Hilton v. Superior Court, supra*, 239 Cal.App.4th 766 and *People v. Waters, supra*, 241 Cal.App.4th 822 to the extent they express views on the meaning of sections 1202.4, 1202.46, and 1203.3 that are inconsistent with our opinion in this case.

McCune argues that we should instead "presume the Legislature to have acquiesced to *Hilton*'s and *Waters*'s interpretation" and thus rely on these distinguishable cases to find the trial court exceeded its jurisdiction here.  He notes that the Legislature did not abrogate those cases when it amended sections 1202.4 and 1202.46 in 2016 (Stats. 2016, ch. 37, §§ 3, 4), or when it passed Assembly Bill 1950 limiting the duration of probation.[5]  He also notes the Legislature failed to enact two

---

[5]    In particular, McCune argues that because the California District Attorneys Association argued in opposition that probation must be "long enough in order to increase the likelihood that a crime victim is paid in full," the Legislature understood that Assembly Bill 1950 might leave some victims without access to full restitution because a court would lack jurisdiction to set the amount of victim restitution owed after the termination of probation.  (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019–2020 Reg. Sess.) as amended May 6, 2020, at pp. 7–8.)  We decline to infer, based on a single argument raised in opposition to a bill, that the Legislature intended such a result when it reduced the maximum length of probation in Assembly Bill 1950.

McCune relatedly argues that those individuals who lose access to direct victim restitution by operation of Assembly Bill 1950 could simply turn to the Restitution Fund as a back stop.  As explained above, we reject the premise that the Legislature intended such a result.  We further note that "the Restitution Fund is not intended, as direct restitution orders are, 'to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . .' " (*Giordano, supra*, 42 Cal.4th at p. 664.)

proposed bills purporting to abrogate *Hilton* and *Waters* by expressly permitting courts to impose restitution after the expiration of a probationary term.  But as we have said, "[a]rguments based on supposed legislative acquiescence rarely do much to persuade" (*Scher v. Burke* (2017) 3 Cal.5th 136, 147), and " '[u]npassed bills, as evidences of legislative intent, have little value' " (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 746).  And of course, as explained above, neither *Hilton* nor *Waters* controls the question before us in any event, where restitution has already been ordered at sentencing in an amount to be determined in accordance with section 1202.4(f).

McCune next points to our acknowledgment in *Chavez, supra,* 4 Cal.5th 771 that "a court's power is significantly attenuated" after probation terminates, such that a court's "power to impose a sentence over the defendant ceases entirely." (*Id.* at p. 782.)  But this case does not concern a trial court's power to impose a sentence after probation terminates; it concerns a trial court's power to fill in the amount of restitution owed under a restitution order, once the amount of the victim's losses can be ascertained.  *Chavez*, which concerned no such issue, has nothing to say about it.

McCune further argues that reading section 1202.46 to extend the trial court's jurisdiction to set victim restitution beyond the term of probation creates a tolling provision where the Legislature had not intended one.  Because the Legislature explicitly permits tolling probation under certain conditions, McCune urges this court not to implicitly read such a tolling provision for restitution orders into section 1203.3.  (See Pen. Code, § 1203.2, subd. (a) ["[R]evocation, summary or otherwise, shall serve to toll the running of the period of supervision"]; *People v. Leiva* (2013) 56 Cal.4th 498, 517–518.)  McCune does

24

not explain, however, why setting the amount of victim restitution owed following the expiration of the term of probation is equivalent to tolling probation. It is true that setting the victim restitution amount after probation has terminated means that restitution will likewise be paid after probation has terminated. But there is no incongruity in this: Again, as we have noted, restitution payments must continue until the order of payment is satisfied, even if the defendant's probation term has ended. (§ 1202.4, subd. (*l*).) There is thus no reason to think that section 1202.46 amounts to a de facto probation tolling provision, and no reason to attach significance to the Legislature's failure to mention it in the context of the tolling provisions in Penal Code section 1203.2.

This brings us to McCune's final point. He worries that unless there is a statutory deadline for fixing the amount of victim restitution, defendants may find themselves surprised by an obligation to pay significant restitution amounts many months or years after they have completed probation. In other words, if a court has the power to set an amount of restitution even after probation has expired, the result may be to "tether probationers to the criminal justice system indefinitely."

We acknowledge the concern. But for nearly two decades since *Bufford* was decided, the law has been clear that a court's power to fix the amount of victim restitution once it becomes ascertainable does not terminate with the completion of a term of imprisonment. McCune points to no evidence that this rule has led to unreasonable delays in fixing restitution amounts. Nor does McCune explain why applying the same rule in probation cases would be more likely to lead to such delays.

To the extent the issue might arise in the future, however, we make clear that our holding that section 1203.3 does not set a strict statutory deadline for specifying the amount of victim restitution does not mean that there are no timing limitations at all. The statutory framework permits a trial court to retain jurisdiction to fix the restitution amount only if losses "cannot be ascertained at the time of sentencing," and only "until such time as the losses may be determined." (§ 1202.46.) This timing requirement must be understood against the backdrop of a constitutional scheme designed to ensure that victims of crime are fully compensated for their losses, an imperative that suggests compensation must be made without needless delay.

McCune does not argue that the trial court's exercise of jurisdiction in this case was untimely. (See fn. 4, *ante*.) Further elaboration of timeliness in the section 1202.46 context is thus beyond the scope of our inquiry here. Nor does McCune's case raise any concerns about unfair surprise as a result of protracted or unwarranted delays. On the contrary: McCune was on notice at the time of his initial plea that he must pay restitution, and once Assembly Bill 1950 operated to reduce McCune's probation term, the prosecution promptly moved for a restitution hearing. The trial court set the amount of victim restitution not long thereafter. Under sections 1202.4 and 1202.46, the trial court had jurisdiction to do so.

## IV.

We affirm the judgment of the Court of Appeal.


**KRUGER, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

PEOPLE v. McCUNE

S276303

Concurring Opinion by Justice Liu

I write to underscore the court's observation that "our holding that [Penal Code] section 1203.3 does not set a strict statutory deadline for specifying the amount of victim restitution does not mean that there are no timing limitations at all. The statutory framework permits a trial court to retain jurisdiction to fix the restitution amount only if losses 'cannot be ascertained at the time of sentencing,' and only 'until such time as the losses may be determined.' ([Pen. Code,] § 1202.46.)" (Maj. opn., *ante*, at p. 26.) Implicit in the scheme is the notion that the court does not have jurisdiction to fix restitution after the point when a victim's losses become reasonably ascertainable. Neither section 1202.4, subdivision (f) nor section 1202.46 of the Penal Code, singly or together, gives a sentencing court unbounded time to set post-probation restitution.

Penal Code section 1202.46's extension of jurisdiction until "such time as the losses may be determined" is best read to mean that restitution must be fixed when the information becomes available to ascertain the amount of loss — i.e., when there is sufficient information such that "the losses may be determined." If the victim, prosecution, or court produces or entertains such information beyond the time it became available or reasonably discoverable, it is doubtful that the court's jurisdiction would extend that far. We interpret the scheme to "ensure that victims of crime are fully compensated for their

1

losses" (maj. opn., *ante*, at p. 26) but not at the cost of "'tether[ing] probationers to the criminal justice system indefinitely'" (*id.* at p. 25). With that understanding, I join today's opinion.

**LIU, J.**

**I Concur:**

**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. McCune

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 81 Cal.App.5th 648
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S276303
**Date Filed:** August 8, 2024

---

**Court:** Superior
**County:** Napa
**Judge:** Elia Ortiz

---

**Counsel:**

Kaiya R. Pirolo, under appointment by the Supreme Court, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, Alan L. Amann, Melissa Mandel, Teresa Torreblanca and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

Hydee Feldstein Soto, City Attorney (Los Angeles), Kent J. Bullard, Assistant City Attorney, and Sahar Nayeri, Deputy City Attorney, for the Los Angeles City Attorney's Office as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kaiya R. Pirolo
Attorney at Law
1212 Broadway, Suite 1200
Oakland, CA 94612
(415) 495-3119

Amanda Lloyd
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 738-9015